## No. 14,999.

### SANDERS *v.* THE PEOPLE.
(125 P. [2d] 154)

Decided March 23, 1942.   Rehearing denied April 27, 1942.

Mr. Byron G. Rogers, Mr. Frank A. Bruno, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Bock delivered the opinion of the court.

Plaintiff in error, to whom we hereinafter refer as defendant, was charged in two counts of an information with the crime of larceny by embezzlement and as bailee under the provisions of pertinent statutes, was tried, convicted and sentenced to serve from five to six years in the penitentiary on each count, sentences to run concurrently. He seeks reversal by writ of error.

Six grounds are urged for reversal, but we deem it necessary to consider only the following: (1) Failure to require the people to elect upon which of the two counts in the information they would prosecute; (2) permitting the people to cross-examine the complaining witness; (3) permitting the testimony of the witness Walker to stand and to so prejudice the rights of defendant as to make a fair and impartial trial impossible.

1. At the conclusion of all the testimony counsel for defendant moved the court to require the district attorney to elect upon which of the two counts he desired to proceed. This motion was denied. There can be no question that the counts relate to one and the same transaction. A motion of this character generally is addressed to the sound discretion of the court. *Smaldone*

*v. People,* 102 Colo. 500, 81 P. (2d) 385. Since both counts were based upon the same transaction, it would have been proper to have requested the court to instruct the jury that a verdict of guilty could be returned only on one of the counts. This, counsel for defendant failed to do. The denial of such a request, if made, might have constituted prejudicial error. Inasmuch as the sentences run concurrently, there was, in this instance, no prejudicial error. *Grandbouche v. People,* 104 Colo. 175, 188, 89 P. (2d) 577.

■ 2. It is somewhat difficult to determine whether the redirect examination of the complaining witness by the district attorney constituted cross-examination. It clearly appears that practically all of the questions were leading. On direct examination the witness' testimony was not hostile, nor did it indicate any surprise to the prosecution. While under cross-examination by counsel for defendant, the witness' testimony was somewhat inconsistent with the contents of a written statement made by her to the prosecutor, and it was after that evidence had been given that the district attorney proceeded to examine the witness on its contents. No foundation for impeachment was laid. This evidence includes statements that were irrelevant and it may have been prejudicial to defendant. Since the matter of leading questions is one largely within the discretion of the trial court, and in view of our disposition of the case, we refrain from a determination of this question.

■■ 3. Relative to the testimony of the witness Walker, a detective then assigned to the office of the district attorney, the record discloses the following:

"The Court: Maybe I can help you out. I believe the rule is that her statement out of the presence of the defendant would be hearsay. Now, the question directed to you is, did anything happen at any time in the nature of any force or coercion on your part to force this lady to sign any papers?

"The Witness: No sir. I told her in order to get her

car there would have to be a pick-up on the car, and I issued a pick-up for Winfield, Kansas, Wichita, Kansas and Oklahoma City. After he was apprehended, after the defendant was apprehended I went over to see Sophia Perrin and told her there had to be a complaint signed. She came to this office and I took her into Mr. Carroll. I told Mr. Carroll there was a man we wanted for embezzlement. He says 'Who is it?' I says 'I handled the man before, and' I says 'he has a record a mile long—'

"Mr. Moore: Now, Mr. Walker, all the time he has been here, knows that is incompetent.

"Mr. Rosner: If your honor please, I will go ahead in the regular way if counsel will let me.

"Mr. Moore: Just a moment—

"Mr. Rosner: I would just as soon ask questions and—

"Mr. Moore: I object to this witness trying to get something into this record he knows is not proper, and is prejudicial.

"The Court: The court will hold conversations between Mr. Carroll and Mr. Walker, out of the presence of the defendant, would not be admissible."

The statement of the witness that defendant "has a record a mile long" was highly prejudicial, especially in view of the fact that Sanders did not testify in the case. Because of the objections by counsel for defendant to this statement, it was incumbent upon the trial judge to strike it from the record and caution the jury to disregard it. Failure to do so was prejudicial error. The primary duty rests upon the judge in a criminal trial to see that it is fairly and impartially conducted. The trial court's ruling that conversations had out of the presence of defendant are inadmissible was not sufficient, in view of objections, to remove the effect of this prejudicial evidence upon the minds of the jurors; moreover, the evidence of the people not being very strong, this testi-

mony may well have been a determining factor in securing a conviction.

This same witness, while under cross-examination by counsel for defendant, also volunteered the statement, "he [defendant] preys on women, not men." Counsel for defendant did not, under the circumstances, request the court to strike this testimony, but it was highly prejudicial, and, under the better practice, the court should immediately have ordered it stricken on his own motion. A trial judge in a criminal case is more than an umpire, ruling on contested questions as they are presented. It is proper that he show an affirmative interest in protecting the constitutional rights of the defendant. We recognize that in the trial of a case, with its fast changing scenes, the attention of the trial judge should be called to any error, in order that it may then be ruled upon and corrected. This does not mean, however, that he should not be vigilant in the conduct of a trial in safeguarding the rights of the individual whose liberty is at stake. As an illustration of such an instance, when evidence of other offenses was being introduced, we said in *Jaynes v. People,* 44 Colo. 535 (99 Pac. 325): "When such testimony is received the trial judge should *then* limit it to the purpose for which it is admitted. Perhaps we have never determined that a failure to so limit it when not requested by the defendant is reversible error, but we have intimated in *Warford v. The People, supra* [43 Colo. 107], that this course should be pursued by trial courts." See, also, *Reppin v. People,* 95 Colo. 192, 207, 34 P. (2d) 71.

The administration of justice always should be impersonal. The individual immediately involved may be guilty of the crime charged, but we are concerned with more than that: "Abhorrence, however great, of persistent and menacing crime will not excuse transgression in the courts of the legal rights of the worst offenders." *United States v. Motlow,* 10 F. (2d) 657, 662.

The judgment is reversed and the case remanded, with directions to grant the motion for a new trial.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE BAKKE and MR. JUSTICE BURKE dissent.