No. 15,324.

ABEYTA ET AL. v. THE PEOPLE
(147 P. [2d] 481)

Decided March 27, 1944.

Mr. E. V. HOLLAND, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. WALLACE S. PORTH, Assistant, for the people.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

The four plaintiffs in error, to whom we hereinafter refer as defendants, or by their individual names, here seek a review of judgments based on the verdicts of a jury finding them guilty of forcible rape and kidnapping.

When we first considered the case it was discovered that the trial court mistakenly had pronounced sentences for kidnapping in excess of the maximum term authorized by the controlling statute, as a result of which the cause was remanded for the imposition of permissible sentences. *Abeyta v. People,* 112 Colo. 49, 145 P. (2d) 884.

Pursuant to such mandate, as is reported in a supplement to the record, the district court, on the kidnapping offense, sentenced each of the defendants to imprisonment in the penitentiary for a period of not less than one year nor more than one year and one day, to run concurrently with the sentences originally imposed for the rape conviction, which were for twenty years to life as to Joe Tafoya, thirty years to life as to Roger Abeyta and Tom Tafoya, and thirty-five years to life in the case of Sam Abeyta.

In so proceeding, the Honorable William A. Black, in whose division the cause fell following the remand, upon the basis of the disclosures hereinafter to be mentioned, expressed serious doubt as to whether the defendant Joe Tafoya had participated at all in the commission of either of the offenses charged, and intimated that if he, as judge of the court had retained his original discretion in the matter, which he felt the limited directions of the remand did not restore, a new trial for Joe Tafoya would have been ordered in course. Judge Black's dilemma, as appears from his remarks in the supplemental record, arose from his doubt of the sufficiency of the identification of Joe Tafoya, who at all times has protested vehemently that he had no connec-

tion whatever with the criminal occurrences involved.

Our examination of the files in the case, especially the matters developed on the motion for new trial therein, as well as the bill of exceptions in another case arising from the same transaction, subsequently tried, convinces us that the doubts manifested by Judge Black as to the question of the identification of Joe Tafoya are substantial and well founded, and in our view extend also to the situation of the defendant Sam Abeyta, though not so obviously.

That the prosecuting witness, a young married woman, was the victim of one of the most reprehensible and brutal attacks ever to come to the attention of this court is established by the evidence beyond question. While standing alone at night on one of the less frequented streets of Denver, where a misadventure had placed her, she was seized by two men and dragged into an automobile from which they had just alighted, wherein were three other males. The five men, detaining the girl in the car, drove to an isolated spot nearby, where at least three of them forcibly had carnal intercourse with her. In the perpetration of such, all of the men at one time or another assisted in holding and manhandling the resisting victim. Driving some distance after this orgy, two of the men removed the girl from the car and started pulling her toward a vacant building nearby, when she broke away from them and fortuitously encountered the night watchman of a factory in that vicinity, who took her under his protection. Some two hours elapsed between the times of her seizure and escape.

To the police that night she gave detailed descriptions of her assailants as well as of the car in which she was detained and from police Bertillon files selected the photograph of Sam Abeyta as that of one of the gang. The next day, the police, on the basis of the description of the prosecuting witness, located the car involved, in which at the time were the defendants Sam

Abeyta, Roger Abeyta and Tom Tafoya, who were taken into custody. Generally their appearance and apparel checked with the descriptions given by the prosecuting witness. The following day, in a shadow box show-up, from seven or eight men of generally similar sizes and characteristics, the prosecuting witness selected the three above named as the individuals who had abducted her and violated her person. Interviewed by the police as to his whereabouts on the night in question, Sam Abeyta said he had attended a certain entertainment then showing at the City Auditorium with Joe Tafoya, and presumably on this lead the latter was picked up by the police. In a day or so he was placed in the show-up with four others for observation by the prosecuting witness, who identified him as being in the car on the occasion in question, saying that while not one of those who had intercourse with her, he had assisted in holding her and was one of the two who had her in the street at the time of her escape.

Thereafter the District Attorney filed an information against the four above named, and against the fifth unknown participant as John Doe, containing three counts, the first for forcible rape, the second for assault to commit rape and the third for kidnapping. Pleas of not guilty were entered by all of the defendants, and trial followed in due course. The prosecuting witness detailed the facts substantially as stated above and positively identified the four defendants as participants in the transaction. Roger Abeyta said he alone took the involved automobile that night, and spent the evening at a tavern and in driving around "with three fellows" whom he did not know by name. Tom Tafoya testified that he spent the evening at a poolroom, got drunk, and slept on a lawn of unknown location all night. Sam Abeyta and Joe Tafoya admitted they were together, but insisted that they had attended the performance mentioned above, stopping at a named poolroom on the way to the show, and at a designated restaurant as they

went home. No additional evidence supporting these alibis was produced.

When the verdicts finding all the defendants guilty on the first and third counts were received, Roger Abeyta and Tom Tafoya arose, and before the Judge silenced them, as was proper, managed to say that while in fact they were parties to the abduction and rape, and had lied on the witness stand, Sam Abeyta and Joe Tafoya were innocent of any connection with the affair.

Due to the fact that the officiating Judge, the Honorable Stanley H. Johnson, had tendered his resignation from the bench effective within a few days after the verdicts were received, the defendants were allowed but five days within which to file motion for new trial and the hearing and arguments thereon proceeded almost immediately. We mention this incident, concerning which error is assigned, as possibly having curtailed inquiries which would have brought to light the perplexing uncertainties now attending the case.

In addition to certain legal questions later to be mentioned, the motion for new trial prayed that such be granted Sam Abeyta and Joe Tafoya upon the grounds that certain newly discovered evidence, as well as the confessions of their codefendants, disclosed their innocence.

Following the outbursts of Roger Abeyta and Tom Tafoya, when the verdicts were received, they were interviewed privately by the police who were informed by them that the party of five who abducted and abused the prosecuting witness was comprised of themselves, Henry Abeyta, Floyd Mondragon and Lee Martinez. The police promptly picked up Mondragon and Martinez, but were unable to find Henry Abeyta, who was reported to be working somewhere in the beet fields.

At the hearing on the motion for new trial, Roger Abeyta and Tom Tafoya, the confessing defendants, named the five participants in the affair as last above stated. Several of the staff of the police force testified

that they had interviewed Mondragon and Martinez. To them, as they stated, Mondragon freely admitted that he was one of the five in the car, the other four being Roger Abeyta, Tom Tafoya, Henry Abeyta and Lee Martinez, as the confessors claimed, and gave the details of the occurrences which, however, in some respects did not correspond with the testimony of the confessing defendants. Martinez, the detectives said, admitted that he had been with Roger Abeyta and Tom Tafoya in the car involved on the night in question, but stated that he parted company with them at about 8:30 or 9:00 o'clock P.M. (The prosecuting witness fixed the time of her abduction as being between 9:30 and 10 o'clock P.M.). As a witness on the hearing on motion for new trial, Mondragon, while admitting that he had confessed to complicity before the police, testified that the story told them was a fabrication designed to help the other "boys" and that in reality he had no connection with the criminal matters involved.

With the record in this state as to the matters now in consideration, Judge Johnson, quite understandably, denied the motion for new trial.

Nearly a year after the completion of the trial and while the cause was in the process of review here, Henry Abeyta, who had been named by the confessing defendants as one of the four participants, was arrested, and admitted that he was one of the party. After the substitution of his name for that of John Doe in the original information, Henry Abeyta, on his plea of not guilty, was convicted of rape and kidnapping at a jury trial over which Judge Black presided. Seeking a review of the judgment which followed, Henry Abeyta has filed the record and bill of exceptions in that proceeding in this court. Certain features of the evidence at the Henry Abeyta trial, particularly the testimony of the prosecuting witness, induced the doubt expressed by Judge Black concerning the guilt of Joe Tafoya, which the Judge detailed in the record of the proceed-

ings for re-sentence in the case at bar, by referring to designated folios in the bill of exceptions in the Henry Abeyta case. Because of such references, their applicability to some of the matters arising on the motion for new trial herein and the peculiar circumstances surrounding the entire controversy, we have concluded, as counsel for defendants have requested, that we should consider the record and bill of exceptions in the Henry Abeyta case in disposing of the case at bar and they are so noticed by us.

From these it appears that in expressing her identification of her alleged assailants, concerning that of Joe Tafoya, the prosecuting witness, inter alia, testified as follows on cross-examination: "Q. What did you say about the second one? A. I feel that there could have been some mistake about them. Q. You feel there could have been some mistake about the second one? A. Yes. Q. That is Joe Tafoya. A. Yes. Q. Well, we will have later another witness that you might identify who resembles this man. You are not sure but you feel there may be some mistake as to his identity? A. Yes. I was certain at the time, but — (Pause). * * * Q. At the time you testified in the previous trial, you did identify Joe Tafoya? A. Yes, sir. Q. As being one of the men who was there that night. A. Yes. Q. Now, you do feel that you are mistaken as to his identity? A. (Pause) I feel I could be. * * * Q. Had you seen Joe Tafoya's picture between the time that this trial and the last trial took place? A. No. Q. But you have been giving some thought to the matter since then and feel that you might be mistaken in his identity. A. Yes." On redirect examination, relative to this subject she stated: "Q. * * * You stated to Mr. McDougal that you could be mistaken about Joe. Why do you feel that you could be mistaken in your identification of Joe Tafoya? Will you explain that for the record, please? A. Well, I didn't see two of the men real clearly. I couldn't see them. Q. What

led to your identification of Joe Tafoya in the first place, if you recall? A. His hair and his face was all."

In his trial, the defendant Henry Abeyta testified that neither Joe Tafoya nor Sam Abeyta was in the party who picked up the prosecuting witness, but that Roger Abeyta, Tom Tafoya, Lee Martinez, Lloyd Mondragon and himself were the five who so offended. Therein, the confessing defendants in the case at bar took the stand and reiterated that the five really involved were the five last named.

The defense in the Henry Abeyta case also offered to prove by three witnesses, apparently disinterested, that Lee Martinez, at different and separate times and places, to them, had admitted his complicity in the matter. As obviously was proper, these purported admissions were rejected in that case as hearsay. The testimony of another neutral witness tended to show that on the night in question, between 8:30 and 9:30 o'clock P.M. she saw Roger and Henry Abeyta, Tom Tafoya, Lee Martinez and Lloyd Mondragon at the Dinty Moore Tavern where the confessions of the two Abeytas and Tom Tafoya placed the five just prior to the abduction.

Mondragon, called as a witness in the latter trial, refused to testify on the ground that his testimony might incriminate himself.

It further appears from the testimony therein of one of the detectives, that in the interim Mondragon has been convicted of rape and kidnapping in an entirely distinct case, in which the criminal methods followed were quite similar to those pursued in the case at bar. At the time sentence was imposed for those infractions, Mondragon, in open court, admitted his guilt in the case at bar, and stated that Martinez and he, and not Sam Abeyta and Joe Tafoya, were the fourth and fifth participants therein.

Following these developments, as appears from supplemental matters in the record, Judge Black, acting

under section 462, chapter 48, C.S.A. '35, ordered the District Attorney to file forthwith informations against Martinez and Mondragon for the offense or offenses arising from the mistreatment of the prosecuting witness.

■ It seems to us that in their aggregate the circumstances detailed must be considered as raising a reasonable doubt as to the guilt of Joe Tafoya and convinces us that in the interests of justice he should be accorded a new trial.

We further entertain the view, with somewhat less certainty however, that the same treatment should be extended to defendant Sam Abeyta. It is not to be gainsaid that the prosecuting witness never has wavered in her identification of him and in her accusation that he took a leading role in the transgressions against her, nonetheless if the evidence in support of Joe Tafoya's alibi is true, and the statements of the participants who have confessed, as well as the extra-judicial admissions of the other suspects are given credence, Sam Abeyta could not have been one of the five culprits.

As a matter of strict legal technique it is possible that we might be justified in closing our eyes on these serious anachronisms on the ground that they had not fully come to light in the trial of the case at bar, and so relegate the solution of the problem to the field of executive clemency. However, considering that four presently are charged with criminal conduct of which but two can be possibly guilty, and that the proceedings are in such state as will permit such an adjudication by the orderly process of trial by jury, we think the course we order is warranted.

As matters of law, it is argued principally on behalf of the defendants: (1) That the counts for forcible rape, assault to commit rape and kidnapping, properly might not be joined in one information, and (2) that the evidence was insufficient to support the charge of kidnap-

ping, which it is said, should not, for this reason, have been submitted to the jury.

██ ██ Under our statute, section 450, chapter 48, '35 C.S.A., there can be no doubt that, when relating to the same transaction, as in the case here, completed rape and an assault to commit that offense rightly may be charged in separate counts of the same information. *Roland v. People,* 23 Colo. 283, 47 Pac. 269. See, also, 31 C.J. 782, section 346 (c). All questions pertaining to the correctness of the ruling denying defendants' motion for an election between the counts for rape, and assault to commit rape, are eliminated by the circumstance that the defendants were acquitted on the assault charge. *Carr v. People,* 99 Colo. 477, 63 P. (2d) 1221; *Smaldone v. People,* 102 Colo. 500, 81 P. (2d) 385.

██ Notwithstanding that the subject is argued pro and con extensively, we have found no record of any motion to quash the information for misjoinder because of the inclusion of the kidnapping count, nor is any assignment or error directed thereto, consequently the question might be disregarded; however, in the view we shall express, such procedural deficiencies are immaterial in any event.

██ In the first instance, the sentences imposed .on the kidnapping count were is excess of those imposed for the rape conviction and upon the basis of the additional imprisonment so accruing, the defendants argue that they were prejudiced very seriously by the submission of the kidnapping charge to the jury. Now that the effective sentences for the latter offense have been reduced in the recent proceeding before the district court to a much shorter period than the minimum for the rape charge and both are made to run concurrently, the defendants Tom Tafoya and Roger Abeyta—who question neither the sufficiency of the information nor evidence on the rape count—under the controlling authorities, are in no position to contend that prejudicial error resulted to them either from the suggested misjoinder

or from the submission of the kidnapping charge to the jury and instructing thereon. See, *Imboden v. People,* 40 Colo. 142, 90 Pac. 608; *Clarke v. People,* 53 Colo. 214, 125 Pac. 113; *Mukuri v. People,* 92 Colo. 306, 19 P. (2d) 1040, and *Sanders v. People,* 109 Colo. 243, 125 P. (2d) 154.

█ The circumstance that in the disposition we make, the defendants Joe Tafoya and Sam Abeyta are to be granted new trials, does not, in our opinion, require that we now pass on the foregoing legal questions, since it would seem that the future procedural moves and presented facts may differ substantially from those attendant in the original trial of the case at bar.

Accordingly, as to the defendants Tom Tafoya and Roger Abeyta, the judgments are affirmed. As to the defendants Sam Abeyta and Joe Tafoya, the judgments are reversed and as to them the cause is remanded for a new trial.

Mr. Justice Burke dissenting in part.

I dissent to the reversal as to defendant Sam Abeyta as an improper invasion of the province of the jury. Otherwise I concur.